IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **PEARLE VISION, INC.,** )  )  **Plaintiff,** )  )  v. )  )  **STAR VISION CENTERS, INC.** and )  **MARK TEGENKAMP, O.D.,,** )  )  **Defendants.** ) | **CIVIL ACTION NO. 08-00046-CG-C** |

## ORDER

This matter is before the court on the motion of plaintiff, Pearle Vision, Inc. ("PVI") for final default judgment against defendants Star Vision Centers, Inc. ("Star Vision") and Mark Tegenkamp. (Doc. 22). After review of plaintiff's motion and attached exhibits, the court finds that PVI is entitled to a permanent injunction against defendants and is entitled to total damages in the amount of $321,777.50.

## FACTS

This is an action to permanently enjoin defendants' unauthorized use of PVI's valuable trademarks and service marks and to collect damages pursuant to the Lanham Act due to defendants' unauthorized and purposeful use of PVI's marks. Default was entered against Star Vision and Tegenkamp by the clerk of this Court on February 22, 2008. (Doc. 16). PVI contends it is entitled to a permanent injunction against defendants as well as money damages in the amount of $1,979,487.96, plus attorney's fees and costs in the amount of $24,854.30.

The complaint lists numerous PVI marks which are registered in the United States Patent and Trademark Office and states that they are currently in full force and effect and that PVI has given notice to the public of the registration as provided in 15 U.S.C. § 1111. (Doc. 1, ¶¶ 15-16).

1

The complaint further states that "PVI has developed a comprehensive operating system for all PVI franchisees in order to protect he image of PVI and ensure uniform, high quality standards." (Doc. 1, ¶ 22). The complaint provides details concerning what that operating system entails. (Doc. 1, ¶¶ 23-25). As a result of the PVI system, PVI has established a high reputation and a positive image with the public as to the quality of products and services available. (Doc. 1, ¶ 26).

Defendants leased the premises located at 30500 State Hwy 181, Suite 241, Spanish Fort, Alabama after the premises were vacated by a terminated PVI franchisee. (Doc. 1, ¶ 27). Despite repeated demands from PVI to remove all PVI marks and trade dress, defendant Star Vision is operating a competing optical retail store at the premises, illegally utilizing PVI's marks and holding itself out to the public as operating a genuine and authorized PVI store using PVI's trade dress. (Doc. 1, ¶¶ 29-31). This has caused and is likely to cause additional mistake, confusion, or deception in the minds of the public as to source, affiliation and sponsorship and has resulted in PVI suffering damages. (Doc. 1, ¶ 33-38). Defendant Tagenkamp agreed to remove the PVI signage and cease use of the PVI marks and trade dress at the location, but has failed to do so. (Doc. 22, Ex. B).

PVI's submitted the affidavit of its Senior Director of Finance, James Schuster, to support the amount of damages it has suffered from the alleged infringement. (Doc. 22, Ex. E). Mr. Schuster states that he has knowledge of the sales for the relevant marketing area within which defendants' store was located. (Id. at ¶ 2). Schuster reviewed the corporate records for the same store location for the year 2005, which was the last full year that the location was licensed to a PVI franchisee. (Id. at ¶ 5). Schuster also reviewed the corporate records of PVI for the Mobile-Pensacola DMA for June 1, 2006 through December 31, 2007. (Id.). Based on those records Schuster estimates that Dispensing Sales based on actual - same store sales performance

of the Mobile Pensacola DMA are $659,829.32 for June 1, 2006 through December 31, 2007. (Id.).  PVI's franchise agreements require royalty payments of 7% of gross sales. (Id. at ¶ 6). PVI's franchise agreements also require payment of an amount equal to 8% of their monthly gross sales in return for advertising sales promotion and public relations expenditures made by PVI on behalf of the entire PVI system. (Id.).  Thus, total revenues for royalty payments and marketing contributions for June 1, 2006 through December 31, 2007 would total $98,974.40 under PVI's standard franchise agreement.

PVI has incurred $24,429.30 in attorneys fees and $425.00 in costs in connection with the prosecution of this case. (Doc. 22. Exs. F & G).

The complaint alleges a violations of 15 U.S.A. §§ 1125(a) & (c) of the Lanham Act.. (Doc. 1, ¶¶ 41-44).  The complaint also asserts a claim for violation of the Alabama Deceptive Trade Practices Act, Ala Code § 8-19-1 et seq., a claim for common law trademark and service mark infringement, and common law unfair competition. (Doc. 1, ¶¶ 45-50).

## DISCUSSION

Monetary recovery for violations of the Lanham Act is provided for by 15 U.S.C. § 1117. Under 15 U.S.C. § 1117, when a plaintiff establishes a violation of § 1125(a) or a willful violation under § 1125(c), the successful party "subject to the principles of equity" may recover: "(1) defendant's [the infringer's] profits; (2) any damages sustained by the plaintiff, and (3) the costs of the action." Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1205 (11th Cir. 2001) (citing 15 U.S.C. § 1117(a) and Babbit Elecs., Inc. v. Dynascan Corp., 38 F.3d 1161, 1182 (11th Cir.1994)).  A court has considerable discretion in determining the proper amount to award in these circumstances and equitable considerations govern the court's assessment of profits.

Burger King Corp. v. Mason, 710 F.2d 1480, 1495 (11th Cir. 1983).  Damages may be awarded even when they are not susceptible to precise calculations.  Ramada Inns, Inc. v. Gadsden Motel Co., 804 F.2d 1562, 1564-65 (11th Cir. 1986).

"An award of an infringer's profits has traditionally been viewed under the Lanham Act and the common law of unfair competition as a way of compensating the plaintiff for sales lost to the infringer." Nutrivida, Inc. v. Inmuno Vital, Inc., 46 F.Supp.2d 1310, 1315 (S.D. Fla.1998). "A plaintiff need not demonstrate actual damage to obtain an award reflecting an infringer's profits." Burger King Corp. v. Mason, 855 F.2d 779, 781 (11th Cir. 1988).  "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a).  Any doubts about the actual amount of gross sales or profits will be resolved against the infringing party. J. THOMAS MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 30:66 (4th ed.1998) (citing Louis Vuitton S.A. v. Spencer Handbags Corp., 765 F.2d 966, 973 (2d Cir.1985)).

Where the infringement is intentional and the unlawful use of a counterfeit trademark has been proven, the court is required to treble damages and award attorney's fees unless the court finds extenuating circumstances.  Babbit Electronics, Inc. v. Dynascan Corp., 38 F.3d 1161, 1183 (11th Cir. 1994); see also 15 U.S.C. § 1117(b).  The term "counterfeit mark" is defined as

> (i) a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered; or
>
> (ii) a spurious designation that is identical with, or substantially indistinguishable from, a designation as to which the remedies of this chapter are made available by reason of section 220506 of Title 36;

15 U.S.C. § 1116(d).  Subsection (ii) is inapplicable here as it concerns the use of the names "Olympic," "United States Olympic Committee" and related terms and symbols. See 36 U.S.C. §

4

220506. However, the court finds that PVI's marks qualify as counterfeit marks under subsection (i). The court also finds that the infringement was intentional. Defendants have failed to appear and have continued to infringe upon PVI's marks after repeated written demands from PVI to cease. Defendant Tagenkamp even agreed to remove the PVI signage and cease use of the PVI marks and trade dress at the location, but failed to do so. Clearly, defendants had knowledge of the alleged infringement, yet continued to infringe upon PVI's marks. The court finds that PVI has demonstrated that defendants intentionally infringed PVI's trademarks and used a counterfeit PVI trademark. Therefore, the court finds that a trebling of damages is required.

The amount of defendants' profits or sales during the relevant time period cannot be precisely calculated since defendants have failed to appear in this action and, therefore, have not participated in discovery. However, as stated above, damages may be awarded even when they are not susceptible to precise calculations and any doubts about the actual amount of gross sales or profits should be resolved against the infringing party. "The wrongdoer may not complain of inexactness where his actions preclude precise computation of the extent of the injury." Ramada Inns, Inc., 804 F.2d at 1565 (citation omitted). "[W]here the wrong is of such a nature as to preclude exact ascertainment of the amount of damages, plaintiff may recover upon a showing of the extent of the damages as a matter of just and reasonable inference, although the result may be only an approximation." Bangor Punta Operations v. Universal Marine Company, 543 F.2d 1107, 1110-1111 (5th Cir.1976) (citation omitted). "It is sufficient if a reasonable basis of computation is afforded." Borg-Warner Corporation v. York-Shipley, Inc., 293 F.2d 88, 95 (7th Cir.1961).

In this case, the damage award requested is based on the unrebutted testimony of PVI's

Senior Director of Finance, James Schuster.  Schuster reviewed the corporate records for the same store location for the year 2005 and PVI's corporate records for the Mobile-Pensacola area for June 1, 2006 through December 31, 2007.   Based on those records, Schuster estimates that defendants' Dispensing Sales for the relevant period are $659,829.32.  While PVI contends that they should be entitled to a judgment in the amount of defendants' estimated gross sales, the court believes the franchise fees PVI would be entitled to under its standard franchise agreement are a more appropriate measure of damages.  See Howard Johnson Co., Inc. v. Khimani, 892 F.2d 1512, 1519 -1520 (11th Cir. 1990) ("The use of lost royalties to determine the actual damages incurred by a victim of trademark misuse is well established in this court." citations omitted).  Defendants appear to have received all the benefits of an authorized franchisee.  Had defendants been properly authorized and licensed as a franchisee to use and operate under PVI's marks, PVI would have received the amounts required under their franchise agreement.  PVI submitted evidence that their standard  franchise agreement requires monthly royalty payments in the amount of 7% of gross sales and monthly payments for "marketing contributions" in the amount of 8% of gross sales.  Thus, total revenues for royalty payments and marketing contributions for the relevant period would total $98,974.40 under PVI's standard franchise agreement. The court finds that this amount, trebled as required under § 1117(b), is an appropriate measure of damages in this case.

Additionally, the court finds that plaintiffs are entitled to attorneys' fees.  Section 1117(a) provides that a court may award attorneys fees in "exceptional cases." 15 U.S.C. § 1117(a). Exceptional cases are those where the infringing party acts in a "malicious, fraudulent, deliberate, or willful manner." Burger King Corp. v. Pilgrim's Pride Corp., 15 F.3d 166, 168 (11th Cir.1994) (quoting H.R.Rep. No. 93-524, 93rd Cong. 1st Sess. (1974)).  The court found

above that defendants' violations were intentional.  Defendants were notified by PVI of their alleged violations and in fact agreed to cease using PVI's marks, but then failed to do so.  PVI continued to try to resolve the case but defendants would not respond further and appear to have made no effort to remove PVI's marks.  Rather than comply with PVI's request and follow through with removing PVI's marks as they had agreed, defendants forced PVI to file this action.  Moreover, defendants' violations are not minor.  Defendants appear to have operated completely under PVI's marks and trade dress.  PVI has incurred $24,429.30 in attorney's fees and $425.00 in costs.  Therefore, the court will include these amounts in the judgment against defendants.

Additionally, the court finds that PVI is entitled to a permanent injunction against defendants from engaging in and/or participating in their continued acts of trademark infringement, dilution, deceptive trade practices and unfair competition utilizing PVI's marks.

## CONCLUSION

For the reasons stated above, the court, by separate order, will enter a permanent injunction against defendants and will award damages to Pearle Vision, Inc. and against defendants in the amount of $321,777.50  ($98,974.40 x 3 plus  $24,429.30 in attorney's fees and $425.00 in costs).

**DONE and ORDERED** this 3rd day of June, 2008.

                               /s/   Callie V. S. Granade
                               CHIEF UNITED STATES DISTRICT JUDGE